UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                    Plaintiff,                    7:13-CV-184 (TWD)

           v.

$11,640.00 in U.S. Currency,

                                    Defendant,

ERVIN J. BEST,

                                    Claimant.
_____

APPEARANCES:                                        OF COUNSEL:

   HON. RICHARD S. HARTUNIAN                            GEOFFREY J. L. BROWN, ESQ.
   United States Attorney                               Assistant United States Attorney
   100 S. Clinton St.
   PO Box 7198
   Syracuse, NY 13261-7198

   ERVIN J. BEST
   Claimant *pro se*
   845 Starbuck Ave., Apt. 204
   Watertown, NY 13601

   **THÉRÈSE WILEY DANCKS**
   United States Magistrate Judge

**DECISION AND ORDER**

## I.      INTRODUCTION

       The United States of America ("Government") seized $11,640.00 from Gerald A. Lacey,

Claimant Ervin Best's ("Claimant" or "Best") business associate, at the Jefferson County Metro

Drug Task Force.  (Dkt. No. 1 ¶ 14.)  The Government, contending that the currency represents

proceeds from Claimant's sale of controlled substances, commenced this civil forfeiture action by

verified complaint under 21 U.S.C. § 881(a)(6).  (Dkt. No. 1.)  The Claimant filed a claim and an

answer asserting an interest in the currency.  (Dkt. No. 4.)  Both the Government and the Claimant

move for Summary Judgment. (Dkt. Nos. 35, 38.) For the following reasons, the Government's

Motion is granted and Claimant's Motion is denied.

## II.  BACKGROUND

On September 5, 2012, detectives of the Jefferson County Metro Drug Task Force

orchestrated a controlled buy of crack-cocaine from Claimant at 122 Court Street, 24 Empsall Plaza,

in Watertown, New York using marked bills. (Dkt. No. 1 ¶ 9.) Prior to the purchase of crack-

cocaine from Claimant, the buyer, an individual known to Claimant, was searched with no

contraband found, issued $250.00 in marked bills, and fitted with a wire. *Id.* This individual was

able to purchase a knotted plastic baggie of crack-cocaine from Claimant, weighing, in aggregate,

3.33 grams, in exchange for the $250.00. *Id.* After leaving the transaction with Claimant, the buyer

was immediately picked up by detectives, debriefed, and the narcotics and recording of the purchase

were placed into police custody as evidence. *Id.* The substance in the baggie tested positive to the

presence of cocaine. *See* Dkt. No. 35-8 at 2.[1]

On September 12, 2012, members of the Jefferson County Metro Drug Task Force

executed a search warrant at 122 Court Street, 24 Empsall Plaza, Watertown, New York. (Dkt. No.

1 ¶ 10.) This site is the location of Claimant's alleged music studio business, "Strong Productions."

*Id.* As a result of the search warrant, approximately twenty-eight (28) grams of cocaine, ten (10)

grams of marijuana, $903.00 in U.S. Currency, and assorted drug paraphernalia were seized. *Id.;*

*see* also Dkt. No. 35-9 at 2.

After the execution of the search warrant on September 12, 2012, Claimant was indicted,

---

[1]     The pages noted in docket entries reference the page numbers assigned by the Court's
electronic filing system.

arrested and committed to the Jefferson County Correctional Facility. (Dkt. No. 1 ¶ 11.) On September 18, 2012, Claimant placed a phone call from the jail to a female individual named Sarah Roy ("Roy"). (Dkt. No. 1 ¶ 12.) The call was recorded by the police. *Id.* Claimant's call to Roy was opened up to include Gerald A. Lacey ("Lacey"), Claimant's associate. *Id.* During this three-way phone call, also recorded by the police, Claimant told Lacey that the police had missed some of the items at his studio, and said that he needed Lacey to go to the studio and retrieve approximately $12,000.00 in cash located in the ceiling above the couch. *Id.*

After the conclusion of the phone conversation with Claimant on September 18, 2012, Lacey went to Claimant's studio, located at 24 Empsall Plaza, in Watertown, New York, and recovered $11,690.00 in U.S. Currency from the ceiling above a couch in a room across from the studio. (Dkt. No. 1 ¶ 13.) This room had been included in the parameters of the search warrant executed on September 12, 2012. *Id.*

On that same date, Lacey contacted the Jefferson County Metro Drug Task Force, located at 735 Waterman Drive in Watertown, New York, and turned over the money. (Dkt. No. 1 ¶ 14.) Lacey also provided officers with a written statement of the events leading to his recovery of the currency. *Id.* In his written statement, Lacey said that he had met Claimant a few months prior to Claimant's arrest on September 12, 2012, and that they had decided to partner together to run a small club in the Empsall Building in Watertown, New York. *Id.* He stated that they had filed a "DBA" for "Strong Productions," but had not yet opened their business. *Id.*

In his written statement, Lacey confirmed the details of the three-way phone call with Claimant, Roy, and himself on September 18, 2012. (Dkt. No. 1 ¶ 15.) He stated that he had received a phone call from a female, and that Claimant was on the other end of the call. *Id.* He also

said that it was difficult for him to hear Claimant, so the female repeated everything Claimant said to him. *Id.* Lacey stated that Claimant said that the police had missed some stuff in the police's search of the studio, and told Lacey where he should look for the currency, which Claimant stated was approximately $12,000.00 in U.S. Currency. *Id.* Lacey stated that after he found the money at the studio, he brought it to the police station, and turned it over to detectives. *Id.*

Of the $11,690.00 in U.S. Currency seized from Lacey on September 18, 2013, by the Jefferson County Metro Drug Task Force, $50.00 was found to be a marked bill used as buy money in the controlled buy of September 5, 2012. (Dkt. No. 1 ¶ 16.)

As noted, on September 12, 2012, Claimant was arrested and charged with Criminal Possession of a Controlled Substance/Narcotic, a Class B Felony in the 3rd Degree. (Dkt. No. 1 ¶ 17.) On November 5, 2012, Claimant was arraigned and charged with the following offenses: (1) Criminal Possession of a Controlled Substance/Narcotic, a Class B Felony in the 3rd Degree; (2) Criminal Sale of a Controlled Substance/Narcotic, a Class B Felony in the 3rd Degree; (3) Criminal Possession of a Controlled Substance/Narcotic with Intent to Sell, a Class B Felony in the 3rd Degree; (4) Criminal Contempt, First Refusal to Testify Before a Grand Jury, a Class E Felony; (5) Criminal Use of Drug Paraphernalia/Scales, a Class A Misdemeanor in the 2nd Degree; (6) Criminal Use of Drug Paraphernalia/Package, a Class A Misdemeanor in the 2nd Degree; and (7) Unlawful Possession of Marijuana. *Id.; see also* Dkt. No. 35-10 at 2.

On March 4, 2013, Claimant entered a plea of guilty to the offense of Attempted Criminal Possession of a Controlled Substance 3rd and was sentenced on March 27, 2013, to a prison term of two (2) years with two (2) years post release supervision. *See* Dkt. No. 35-10 at 2.

Claimant disputes that he sold drugs under a controlled buy. (Dkt. No. 46 at 5, 6.) He

asserts that he had two phone calls with Lacey and "Lacey stated on the Phone Conversation that he never found any U.S. Currency to the Claimant on the prison phone in Jefferson County. . . ." *Id.* at 6. Claimant alleges he was kept in his cell on a "so called smuggling charge" because the United States sent a letter to the prison. *Id.* at 3. He claims that the seizure of the currency at issue violated his Fourth and Fourteenth Amendment rights. *Id.* at 4. He also asserts that the currency came from his recording studio business and the sale of related items. *Id.* at 9.

## III.    PROCEEDINGS TO DATE

Plaintiff filed a Verified Complaint of Forfeiture *in Rem* for the forfeiture of the defendant currency on February 15, 2013, pursuant to 21 U.S.C. § 881(a)(6). (Dkt. No. 1.) A Warrant of Arrest for Articles *in Rem* was issued for the arrest of the defendant currency subject to forfeiture in this action, which was executed on March 11, 2013. (Dkt. Nos. 2, 3.) On March 22, 2013, Claimant Best filed a claim to the defendant currency and an Answer to the Verified Complaint for Forfeiture *in Rem*. (Dkt. No. 4.) On May 23, 2013, a hearing on the return of the Warrant of Arrest for Articles *in Rem* was held before the Hon. Gary L. Sharpe, Chief District Judge for the Northern District of New York, in Albany, New York. (Text Minute Entry 5/23/2013.) An appearance was made by AUSA Richard Beliss on behalf of the Government, and an Affidavit of Non-Military Service, Non-Infancy, and Non-Incompetency signed by AUSA Geoffrey J. L. Brown was submitted to the Court. (Dkt. No. 13.) After the conclusion of the hearing on the return of the Warrant of Arrest for Articles *in Rem* on May 23, 2013, the Court issued an Order barring all further claims, other than the claim of Best, in this action. (Dkt. No. 14.)

On June 25, 2013, Chief Judge Sharpe issued an Order, based upon a stipulation of the parties to the action, providing that the undersigned Magistrate Judge for the Northern District of

New York would have jurisdiction over all aspects of this action including the trial, orders and entry

of judgments, and any post-judgment proceedings. (Dkt. No. 17.) On June 28, 2013, this Court

issued an Order, pursuant to a Rule 16 Scheduling Stipulation submitted by the parties, setting forth

the discovery and trial deadlines. (Dkt. Nos. 18 and 19.)

On July 9, 2013, the Government sent Claimant Plaintiff's First Set of Interrogatories,

Plaintiff's First Request for Production of Documents, and Internal Revenue Service Tax

Information Authorization, Form 8821, *via* certified mail/return receipt, which was delivered to

Claimant's address of record at Five Points Correctional Facility in Romulus, New York, on July

11, 2013. *See* Dkt. No. 35-4. The Government voluntarily provided Claimant with 40, rather than

30 days in which to respond, which set the date for Claimant's response for Tuesday, August 20,

2013. *Id.* Claimant responded to the Government's initial discovery requests and Best's

Interrogatory Responses were received by the Government on August 22, 2013. (Dkt. No. 35-13.)

The Government also apparently received a signed authorization for the Claimant's tax returns

because the returns for the tax years 2008 through and including 2012 were obtained by the

Government. (Dkt. Nos. 35-11 and 35-12.)

On August 26, 2013, the Government sent Claimant Plaintiff's First Set of Requests for

Admissions *via* FedEx Overnight Delivery at his address of record at Five Points Correctional

Facility in Romulus, New York. *See* Dkt. No. 35-5. This letter advised Claimant that his response

was due within 30 days of his receipt of these requests. *Id.* The Requests for Admissions were

delivered on Tuesday, August 27, 2013, setting Claimant's deadline for response for Thursday,

September 26, 2013. *See* Dkt. No. 35-6. On August 28, 2013, the Government submitted a letter

motion requesting an extension of discovery deadlines. (Dkt. No. 20.) This request was granted by

Order of the Court on August 29, 2013.  (Dkt. No. 22.)  That same day, the Government mailed out its Second Set of Interrogatories and Plaintiff's Second Request for Production of Documents to Claimant.  (Dkt. No. 35-7.)

Pursuant to a status report from Claimant entered on the Docket on October 3, 2013, the Court granted another extension of discovery deadlines to allow Claimant the opportunity to complete discovery upon the return of his original documents.  (Dkt. Nos. 23, 24.)  The Government responded on October 4, 2013, advising the Court that all original documents had been returned to Claimant *via* certified mail, return receipt.  (Dkt. No. 25.)  On November 12, 2013, Claimant filed a letter motion requesting that the Court determine why the original documents Claimant had submitted to the Government with his discovery responses had not yet been returned to him.  (Dkt. No. 27.)  In response, the Court issued an Order for the Government to address the issues submitted by Claimant in that letter motion of November 12, 2013.  (Dkt. Nos. 27 and 28.)  The Government submitted its response on November 18, 2013, advising the Court and Claimant that the original documents Claimant had requested had, in fact, been delivered to Claimant at the Five Points Correctional Facility on October 9, 2013, via certified mail/return receipt.  (Dkt. No. 29.)  The Government also notified the Court that in light of Claimant's renewed request for originals, the Government would retain only a photocopy of Claimant's discovery submissions, and original release forms, and would return all remaining letters from his discovery submissions to him.  *Id.* The Court denied Claimant's letter motion of November 12, 2013, because the documents Claimant sought had been returned to him by the Government.  (Dkt. No. 31.)  No other requests for extensions of the discovery deadlines were sought by either party and discovery closed November 29, 2013.  (Dkt. No. 24.)  Claimant failed to respond to the Government's First Set of Requests for

Admissions, the Second Set of Interrogatories, and the Second Request for Production of Documents.

## IV. LEGAL STANDARD AND SUBSTANTIVE LAW

### A. Legal Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-52 (1986). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970). A fact is material "if it might affect the outcome of the suit under governing law," while an issue of fact is genuine "where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Giordano v. City of New York,* 274 F.3d 740, 746-47 (2d Cir. 2001) (quoting *Anderson,* 477 U.S. at 248). Furthermore, "the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted). The court must also construe the evidence in the light most favorable to the nonmoving party when drawing inferences from the underlying affidavits, exhibits, interrogatory answers and depositions. *Id.* (citations omitted).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann,* 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them

8

to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999)[2] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

B.  **Substantive Law**

Federal forfeiture laws make all money furnished in exchange for controlled substances, and all proceeds traceable to such an exchange, subject to civil forfeiture.  *See* 21 U.S.C. § 881(a)(6). When funds are seized for civil forfeiture by a government agency, timely notice of the forfeiture proceedings must be given to "interested parties," including the property owner.  18 U.S.C. § 983(a)(1)(A)(i).  If the property owner or other interested parties wish to challenge the forfeiture, they must claim an interest in the property and establish ownership.  *See id.* § 983(a)(2).  Once the property owner claims an interest, the forfeiture is pursued as a judicial forfeiture in accordance with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  *See id.* § 983(a)(3)(A).

Pursuant to section 881(a)(6) of Title 21 of the United States Code, money that is "furnished by any person in exchange for a controlled substance," "traceable to such an exchange," or "used or intended to be used to facilitate a violation of this subchapter" is subject to forfeiture to the United States.  Under the Civil Action Forfeiture Reform Act of 2000 ("CAFRA"), codified in part at 18 U.S.C. § 983, "the burden of proof is on the Government to establish, by a preponderance of the

---

[2]  A copy of the unpublished decision in *Cole* will be provided to Claimant by the Clerk in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

evidence, that the property is subject to forfeiture." *Id.* § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id.* § 983(c)(3). This "preponderance of the evidence" standard replaced the "probable cause" standard applied in the pre-CAFRA forfeiture cases. *See, e.g., United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 n.4 (7th Cir. 2005).

As stated in *United States v. $22,173.00 in United States Currency,* 716 F. Supp. 2d 245 (S.D.N.Y. 2010):

> Thus, if the Government is seeking forfeiture, pursuant to 21 U.S.C. § 881(a)(6), on a theory that property constitutes proceeds traceable to an exchange of narcotics, it must demonstrate that those proceeds have a substantial connection to drug trafficking. However, it need not prove that there is a substantial connection between the property and any specific drug transaction. Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking.

*$22,173.00,* 716 F. Supp. 2d at 250 (citations and internal quotation marks omitted).

## V.    DISCUSSION

Plaintiff Government moves for summary judgment arguing that the totality of the circumstances establishes by a preponderance of the evidence that a substantial connection exists between the defendant currency and the illegal conduct committed by Claimant, who claims ownership of the defendant currency. Claimant argues he is entitled to summary judgment because the Government has not proven he made a controlled sale of drugs to anyone. He further argues that the Government has not submitted transcripts of the phone calls he allegedly made from prison concerning the currency hidden in his studio, and that the currency "was legally obtained and not

from illegal drug sales." (Dkt. No. 46 at 9.) The Government countered that the Claimant's unsubstantiated claims have not raised a material issue of fact and therefore granting summary judgment to the Government in this civil forfeiture proceeding is appropriate. For the reasons discussed below, the Court agrees with the Government.

Additionally, the Government argues that Claimant, through his failure to provide any response to Plaintiff's First Set of Requests for Admissions, admits the following: (1) he has no response as to a legitimate source for the defendant currency; (2) he engaged in the sale of illegal narcotics to a female individual on September 5, 2012; (3) he sold narcotics from the premises of 122 Court Street, 24 Empsall Plaza, Watertown, New York, a/k/a, "Strong Productions"; (3) he has no legitimate explanation for the presence of the marked $50.00 bill used in the September 5, 2012, controlled buy of narcotics from Claimant that was later found in the defendant currency; (4) that twenty-eight grams of cocaine, ten (10) grams of marijuana, assorted drug paraphernalia, and $903.00 in U.S. Currency were seized from 122 Court Street, 24 Empsall Plaza, Watertown, New York, by members of the Jefferson County Metro Drug Task Force during their execution of a search warrant on September 12, 2012; (5) he instructed Lacey to retrieve approximately $11,700.00 in U.S. Currency from the ceiling at 122 Court Street, 24 Empsall Plaza, Watertown, New York during a phone call made from the Jefferson County Correctional Facility; (6) he pleaded guilty on March 4, 2013, and was sentenced on March 27, 2013, for the offense of Attempted Criminal Possession of a Controlled Substance in the Third Degree of a Narcotic Drug with the Intent to Sell, which is a Class C Felony; (7) his primary source of income during the past five (5) years was from the sale of illegal narcotics; and (8) he concealed the defendant currency in the ceiling at 122 Court Street, 24 Empsall Plaza, Watertown, New York because it constitutes the proceeds of the sale of

illegal narcotics. (Dkt. No. 35-5.)

As noted, Claimant answered the Government's First Set of Interrogatories. (Dkt. No. 35-13.) In those responses, Claimant asserts that he worked side jobs for himself and other people, including his recording studio work. *Id.* at 6. He sold clothing, footwear, music CD's, DVD's, and recordings, and did data entry for music webpages and blogs. *Id.* His yearly income from these sales and work ranged from $8,000 to $24,000 per year between 2008 and 2012. *Id.* at 7. He also received loans and gifts of money from family and won $990 in the lottery. *Id.* He claims the source of the currency at issue was his recording studio business, and selling clothing, footwear, CD's and DVD's. *Id.* Claimant argues that there was no need to answer the Plaintiff's Notice to Admit because he had given the same answers in his Responses to the Interrogatories. (Dkt. No. 46 at 8.) Claimant does not address why he did not respond to the Government's Second Set of Interrogatories or Second Request for Production of Documents.

### A. Claimant's Lack of Legitimate Income

It is well established that "a great disparity between the amount of cash seized and it's carrier's legitimate income creates an inference of illegal activity." *United States v. United States Currency in the Sum of One Hundred Eighty-Five Thousand Dollars*, 455 F. Supp.2d 145, 155 (E.D.N.Y. 2006) (*"One Hundred Eighty-Five Thousand Dollars"*). Here, the Government submits copies of Claimant's income tax returns obtained through discovery for five (5) years prior to the seizure of the defendant currency as proof that Claimant did not have sufficient legitimate income to acquire the defendant currency. (Dkt. Nos. 35-11, 35-12.) Claimant's reported taxable income for the years 2008, 2009, 2010, and 2011 was, respectively, $8,058, $9,510, $5,663, $9,715. *Id.* Claimant reported a loss of income in the amount of $3,104 in 2012. (Dkt. No. 35-12 at 23-24.)

Notably, the reported income shown on Claimant's tax returns differs from the income Claimant reported for those same years in his responses to the Government's First Set of Interrogatories. (Dkt. No. 35-13 at 7.)

These annual income figures shown on Claimant's tax returns simply do not adequately support any legitimate explanation for how Claimant was able to store nearly $12,000.00 in U.S. Currency, more than five times his reported annual income for 2012, which was a loss of $3,104, in the ceiling of his recording studio. Additionally, Claimant claimed status as a single head of household with one qualifying child on his tax returns for the years 2008    2011 making it even more improbable that the defendant currency may be explained by any earnings that Claimant purports to have saved from the income he has reported during these years. *See* Dkt. Nos. 35-11 and 35-12.

In attempting to demonstrate a legitimate source of income and that grounds for forfeiture do not exist, Claimant asserts that the defendant currency was obtained from his business pursuits. (Dkt. No. 38 at 8; Dkt. No. 46 at 9.) In his response to the Government's First Set of Interrogatories, Claimant indicated that the source of currency at the time of his arrest was from his business running a recording studio, doing music production, and selling clothing, footwear, CDs and DVDs. (Dkt. No. 35-1 at 13; Dkt. No. 46 at 21.) He also indicated that he won money in the lottery and family provided him loans. *Id.*

However, Claimant has not provided documentation of such other legitimate sources of income in opposition to the Government's summary judgment motion or in support of his summary judgment motion. For example, he has not submitted any sales receipts, affidavits from artists who have used his music studio services, affidavits from family, or statements from any lottery authority.

He has not provided information regarding invoices or ledgers from his business, websites or blogs he designed, or any other proof of his claim that the subject defendant currency resulted from other sources or his business pursuits. These claimed sales and sources of income are not evident in his tax returns. Even construed liberally, Claimant's unsupported assertions are insufficient to show that the defendant currency is derived from a legitimate source and are insufficient to create a triable issue of fact. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."); *see also Cole*, 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 ("a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.").

In short, Claimant has offered no plausible explanation for his ownership of the defendant currency. *See, e.g., United States v. Currency, U.S., $864,400.00*, 405 F. App'x 717, 719 (4th Cir. 2010) (*per curiam*) (finding self-serving declarations did not give rise to a dispute over a material fact). *See also, e.g., United States v. 6 Fox Street*, 480 F.3d 38, 44 (1st Cir. 2007) (claimant's lack of legitimate income, as reflected on his tax returns, during the time he sold drugs and acquired the defendant assets, left district court with "no choice" but to enter summary judgment for the Government on the forfeitability issue); *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (affirming summary judgment for the Government in § 881(a)(6) case where income totaling $31,000 over six years did not suffice as legitimate source of defendant currency); *United States v. $107,840.00 in U.S. Currency*, 784 F. Supp. 2d 1109, 1126 (S.D. Iowa 2011) (granting summary judgment to the Government in § 881(a)(6) case where income totaling $120,000 over ten years did not suffice as legitimate source of defendant currency); *United States v. $21,055.00 in United States Currency, More or Less*, 778 F. Supp. 2d 1099, 1105 06 (D. Kan.

14

2011) (granting summary judgment to the Government in § 881(a)(6) case where annual incomes between $21,000 and $27,000 did not suffice as legitimate source of defendant currency); *United States v. $52,000.00 More or Less, in U.S. Currency*, 508 F. Supp. 2d 1036, 1041 42, 1045 (S.D. Ala. 2007) (granting summary judgment to the Government in 21 U.S.C. § 881(a)(6) case where annual incomes between $3,000 and $27,000 did not suffice as legitimate source of defendant currency).

The lack of legitimate income is sufficient to satisfy the Government's burden of proving by a preponderance of the evidence that the defendant property is subject to forfeiture pursuant to 18 U.S.C. § 983(c)(1). *United States v. $118,170.00 in U.S. Currency*, 69 F. App'x 714, 717 (6th Cir. 2003) (quoting *United States v. $174,206.00 in U.S. Currency*, 320 F.3d at 662) ("[E]vidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income or any evidence indicating innocent ownership, satisfies the burden imposed by the statute [18 U.S.C. § 983(c)(1)].").

Because Claimant has provided no real evidence to support his explanation as to the origin of the currency, the Government asserts that his bald denials that the defendant currency constitutes the proceeds of the sales of narcotics are untenable; and that the currency, more likely than not, was derived from Claimant's sales of narcotics. The Court agrees.

**B. Claimant's Drug Offense and a Substantial Connection to the Defendant Currency**

As noted above, under CAFRA, the Government must establish that there was a substantial connection between the defendant currency and the criminal offense. 18 U.S.C. § 983(c)(3). The Government need not prove that there is a substantial connection between the currency and any

specific drug transaction, but rather the Government may prove more generally, based upon the totality of the circumstances, that the currency is substantially connected criminal activity. *One Hundred Eighty-Five Thousand Dollars*, 455 F. Supp. 2d at 149-50 (citations omitted).

The Government has shown in the Verified Complaint that on September 5, 2012, less than two weeks prior to the seizure of the defendant currency, detectives of the Jefferson County Metro Drug Task Force orchestrated a recorded controlled buy of crack-cocaine from Claimant at 122 Court Street, 24 Empsall Plaza, in Watertown, New York using marked bills. (Dkt. No. 1 ¶ 9.) The controlled buy resulted in the Claimant selling a 3.33 gram baggie of crack-cocaine. *Id.* The execution of a search warrant of Claimant's studio located at the same address on September 12, 2012, resulted in the seizure 28 grams of cocaine, ten (10) grams of marijuana, $903.00 in U.S. Currency, and assorted drug paraphernalia. (Dkt. No. 1 ¶ 10.) Notably, when the defendant currency was turned over to the Jefferson County Metro Drug Task Force by Lacey on September 18, 2012, it was found to contain one of the marked $50.00 bills used in the controlled buy of September 5, 2013. (Dkt. No. 1 ¶ 16.) In addition to the foregoing evidence connecting the defendant currency with Claimant's sale of narcotics, Claimant ultimately pled guilty on March 4, 2013, to the charge of Attempted Criminal Possession of a Controlled Substance 3rd. (Dkt. No. 35-10.)

In Claimant's Response in Opposition to the Government's Motion for Summary Judgment, Claimant alleges that phone calls he had from the jail with Lacey could be presented as evidence to "resolve the matter of this litigation of this forfeiture." (Dkt. No. 46 at 2.) He also alleges that "the United States sent the letter to the Capt. to have [Claimant] kept in [Claimant's] cell for 30 days for a so called smuggling charge." (Dkt. No. 46 at 3.) Claimant further alleges that the seizure of the

defendant currency was illegal and violated his Fourth and Fourteenth Amendment rights. (Dkt. No. 46 at 4.) Claimant asserts that "the Metro Task Force never made a control buy from the Claimant." (Dkt. No. 46 at 7.) Claimant states that his discovery responses and tax information prove that the defendant currency "was legally obtained and not from illegal drug sales." (Dkt. No. 46 at 9.) Finally, Claimant alleges that his recording studio has been under bankruptcy protection for seven or eight years. *Id.*

However, Claimant has not provided any evidence of the phone calls, the letter related to the smuggling charges, or the allegedly illegal seizure of the defendant currency. Claimant has not provided any evidence that refutes the Government's proof that a controlled buy of crack-cocaine from Claimant occurred on September 5, 2012. (Dkt. No. 1 ¶ 9.) Claimant has not shown how his discovery responses and tax information refute the allegations in the complaint. Instead, as noted above, Claimant's tax information and unsubstantiated music production pursuits and related business sales do not support enough earned income to explain the presence of the defendant currency hidden in the ceiling of his music studio. He does not provide any information of a bankruptcy proceeding concerning the studio business, nor does any such bankruptcy create a genuine issue of material fact germane to this civil forfeiture proceeding. In short, Claimant's unsubstantiated conclusory assertions do not provide a substantive challenge to the Government's motion for summary judgment. *Anderson*, 477 U.S. at 247 48.

The evidence of Claimant's narcotics distribution activities, his plea of guilty to a narcotics charge, the presence of the marked bill with the defendant currency, and Claimant's failure to provide a plausible alternative explanation for the origin of the currency all suggest that he was involved in illegal activity. The Court finds this evidence provides a substantial connection

between the defendant currency and Claimant's sales of narcotics.

**C.    Claimant's Failure to Respond to the Government's First Request for Admissions**

The Government argues that Claimant has, by virtue of his failure to respond to the Government's First Request for Admissions, admitted that the currency is derived from the sale of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  Pursuant to Fed. R. Civ. P. 36(a)(3), "a matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Subsection (b) states further: "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).

Here, the Government sent Claimant Plaintiff's First Set of Requests for Admissions via FedEx Overnight Delivery at his address of record at Five Points Correctional Facility in Romulus, New York.  (Dkt. No. 35-3.)  This letter advised Claimant, in bold, that his response was due within 30 days of his receipt of these requests.  *Id.*  The Requests for Admissions were delivered on Tuesday, August 27, 2013, which thus set Claimant's deadline for response for Thursday, September 26, 2013.  *See* Dkt. Nos. 35-5 and 35-6.  The Claimant never responded to these requests, even though the Court extended the deadline for discovery to November 29, 2013, which was well beyond the original September 27, 2013, deadline.  *See* Dkt. Nos. 19, 22, and 24.  The Claimant never moved to have the admissions withdrawn or amended either.

The Government thus contends that through his failure to respond to Plaintiff's First Set of Requests for Admissions, the Claimant admitted the following items relevant to the Motion for

18

Summary Judgment: (1) Claimant has no response as to a legitimate source for the defendant currency; (2) Claimant's primary source of income during the past five (5) years was the sale of illegal narcotics and (3) Claimant concealed the defendant currency in the ceiling at 122 Court Street, 24 Empsall Plaza, Watertown, New York because it constitutes the proceeds of the sale of illegal narcotics. *See* Dkt. No. 35-5.

Claimant argues that "[t]here was no need for the Admissions to the Defendant to be answered when the Defendant has given the United States the same Answers to the Interrogatories." (Dkt. No. 46 at 8.) However, Rule 36 of the Federal Rules of Civil Procedure allows parties to request admissions from other parties regarding the truth of any matter relating to the facts of the case. Fed. R. Civ. P. 36. Rule 33 of the Federal Rules of Civil Procedure permits parties to serve interrogatories on other parties "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 33. The Government is not limited to sending either requests for admissions or interrogatories. Therefore, the Government properly requested admissions from Claimant. Thus, in light of these admissions, the Government contends there remains no outstanding material issue of fact with regard to the forfeitability of the defendant currency pursuant to 21 U.S.C. § 881(a)(6) as the proceeds of narcotics sales.

Even discounting the Claimant's failure to respond to the Government's Request for Admissions, Claimant has not submitted any evidence in admissible form to support his contentions that the defendant currency came from a legitimate, legal source of Claimant's income as set forth in his responses to the Government's Interrogatories. Claimant only submitted what appears to be two pages of print advertisements for athletic clothing, *see* Dkt. No. 38 at 13-14, without any explanation of the relevance of those advertisements in refuting the Government's motion for

summary judgment. Claimant has submitted no other evidence showing a legitimate source for the defendant currency or that it was legitimately obtained by him. Moreover, the totality of the circumstances show a controlled buy of narcotics from the Claimant and his subsequent conviction on a narcotics charge, the defendant currency hidden in the ceiling of Claimant's music studio, the marked bill located with the defendant currency, and the seizure of narcotics from Claimant's music studio pursuant to a search warrant executed on September 12, 2012. The Court can come to no conclusion other than that the defendant currency is substantially connected to the drug trade.

Based upon all of the uncontroverted evidence, the Court finds that the Government is entitled to summary judgment because: 1) Claimant lacks legitimate income sufficient to account for his ownership of the defendant currency and has failed to provide a plausible explanation for its existence; 2) a substantial connection exists between the defendant currency and Claimant's narcotics trafficking activities; and 3) Claimant has failed to submit any admissible evidence to refute the Government's proof or to support his bald assertions that the defendant currency was legitimately obtained. Therefore, since the Government has shown that the currency is derived from the sale of narcotics, the Court finds it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## VI.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Government's Motion for Summary Judgment (Dkt. No. 35) is **GRANTED**; and it is further

**ORDERED** that Claimant's Motion for Summary Judgment (Dkt. No. 38) is **DENIED;** and it is further

**ORDERED** that the Clerk provide Claimant with a copy of *Cole v. Artuz*, No. 93 Civ. 5981

(WHP) (JCF), 1999 WL 98387, 1999 U.S. Dist. LEXIS 16767 (S.D.N.Y. Oct. 28, 1999).


Dated: August 25, 2014
       Syracuse, NY


                                    Therese Wiley Dancks
                                    United States Magistrate Judge


Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green Haven
Correctional Facility, R. Pflueger, A. Glemmon, Sgt.
Stevens, Lt. Haubert, Capt. W.M. Watford, Capt. T.
Healey, and John Doe # 1–5, all as individuals, De-
fendants.

No. 93 Civ. 5981(WHP) JCF.
Oct. 28, 1999.

Mr. Craig Cole, Bare Hill Correctional Facility,
Malone, New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of
the Attorney General of the State of New York, New
York, New York, for Defendant.

*MEMORANDUM & ORDER*
PAULEY, J.

**\*1** The remaining defendant in this action, Cor-
rection Officer Richard Pflueger, having moved for an
order, pursuant to Fed.R.Civ.P. 56, granting him
summary judgment and dismissing the amended
complaint, and United States Magistrate Judge James
C. Francis IV having issued a report and recommen-
dation, dated August 20, 1999, recommending that the
motion be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff
does "not contest the dismissal of this action", it is

ORDERED that the attached report and recom-
mendation of United States Magistrate Judge James C.

Francis IV, dated August 20, 1999, is adopted in its
entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*
FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green
Haven Correctional Facility, brings this action pur-
suant to 42 U.S.C. § 1983. Mr. Cole alleges that the
defendant Richard Pflueger, a corrections officer,
violated his First Amendment rights by refusing to
allow him to attend religious services. The defendant
now moves for summary judgment pursuant to Rule
56 of the Federal Rules of Civil Procedure. For the
reasons set forth below, I recommend that the de-
fendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at
the Green Haven Correctional Facility. (First
Amended Complaint ("Am.Compl.") ¶ 3). From June
21, 1993 to July 15, 1993, the plaintiff was in keeplock
because of an altercation with prison guards.
(Am.Compl.¶¶ 17–25). An inmate in keeplock is
confined to his cell for twenty-three hours a day with
one hour for recreation. (Affidavit of Anthony An-
nucci dated Dec. 1, 1994 ¶ 5). Pursuant to DOCS
policy, inmates in keeplock must apply for written
permission to attend regularly scheduled religious
services. (Reply Affidavit of George Schneider in
Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.")

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

¶ 3). Permission is granted unless prison officials determine that the inmate's presence at the service would create a threat to the safety of employees or other inmates. (Schneider Aff. ¶ 3). The standard procedure at Green Haven is for the captain's office to review all requests by inmates in keeplock to attend religious services. (Schneider Aff. ¶ 3). Written approval is provided to the inmate if authorization is granted. (Affidavit of Richard Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The inmate must then present the appropriate form to the gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

*2 On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Or-

der dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International,*

*Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se's*] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*

It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)
**(Cite as: 1999 WL 983876 (S.D.N.Y.))**

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated.[FN1]

FN1. In light of this finding, there is no need to consider the defendant's qualified immunity argument.

*Conclusion*

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

S.D.N.Y.,1999.
Cole v. Artuz
Not Reported in F.Supp.2d, 1999 WL 983876 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.